UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

William Lefebvre,

       Plaintiff,

       v.                                                    Civil Action No. 5:12-CV-163

Andrew Pallito, Adam Mickel,
Mark Potanas, Joshua Rutheford,[1]

       Defendants.


## <u>REPORT AND RECOMMENDATION</u>
(Doc. 17)

Plaintiff William Lefebvre, an inmate in the custody of the Vermont Department

of Corrections ("DOC"), brings this action *pro se* under 42 U.S.C. § 1983 claiming that

Defendants Andrew Pallito, Adam Mickel, Mark Potanas, and Joshua Rutheford failed to

protect him from harm from another inmate during his incarceration. (Doc. 5.)

Defendants have filed a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), in which

they argue that: (1) Plaintiff's claim for monetary damages is barred by sovereign

immunity; (2) Plaintiff failed to exhaust his administrative remedies as required by the

Prison Litigation Reform Act of 1995 ("PLRA"); (3) Plaintiff has insufficiently alleged

the personal involvement of any Defendant in the alleged wrongful conduct; (4) Plaintiff

has failed to allege physical injury as required by the PLRA; and (5) Plaintiff's claim

---
[1] Defendant Rutheford's name is alternatively spelled "Rutherford" and "Rutheford" in the
record. Herein, for the sake of consistency, the court uses the spelling preferred by Plaintiff, "Rutheford."

fails on its merits.  (Doc. 17.)  The time for Plaintiff to file a response to the Motion has passed without him having done so.

For the reasons set forth below, I recommend that the Motion to Dismiss be GRANTED, and the case be DISMISSED with leave to amend.

### Facts and Procedural Background

For purposes of deciding Defendants' Motion to Dismiss, the court accepts as true the facts alleged in the Complaint.  Plaintiff, who was an inmate at the Southern State Correctional Facility ("SSCF"), alleges that over the course of several days, approximately November 10, 2011 to November 14, 2011, he was sexually assaulted by his cellmate, Bubba Lake.  According to Plaintiff, after Lake moved into his cell on or about November 10, 2011, Lake repeatedly asked whether Plaintiff would perform oral sex on him.  (Doc. 5 at 8.)  Plaintiff rebuffed Lake's advances, but "[t]he more [Plaintiff] said no, the angr[ier] [Lake] got."  (*Id.*)  Lake told Plaintiff that "the only way he would leave [Plaintiff] alone" was if Plaintiff performed oral sex on him.  (*Id*. at 9.)  Plaintiff eventually relented because he "felt that if [he] didn't cooperate [he] would be physical[l]y hurt."  (*Id.*)  The same course of events transpired the following day.[2]

Two nights later, on or about November 13, Lake told Plaintiff that he wanted to perform anal sex on the Plaintiff.  (*Id*. at 10.)  When Plaintiff demurred, Lake "started getting mad and punching the walls."  (*Id.*)  Lake told Plaintiff that he had to participate

---

[2] Plaintiff has also provided an affidavit from another inmate in which the inmate states that Plaintiff "told [him] that his cell mate had forced him to perform oral sex on him multiple times."  (Doc. 11.)

or he "would get hurt." (*Id*.)  Plaintiff was "really scared," and therefore allowed Lake to

perform anal sex on him.  (*Id*. at 10-11.)

Plaintiff reported the abuse to "COI Hayes," who then reported to "CSS Mickel."

(*Id*. at 7.)  Lake was moved to restrictive housing, and Plaintiff was taken to meet with

"SOS Rutheford."  (*Id*. at 7-8.)  Plaintiff relayed the sequence of events to Rutheford and

was then "sent to see Ruth Kibby from mental health."  (*Id*. at 11.)  Plaintiff informed

Kibby that he feared for his safety because he had gone to the commanding officer for

help.  (*Id*.)  Plaintiff also told her that he feared his complaints would not be taken

seriously.  (*Id*.)  Plaintiff was sent to the medical unit, where he requested to be taken to

the hospital.  (*Id*.)  The nurse informed him that "there was no point" because he had

already showered and brushed his teeth.  (*Id*.)  Plaintiff was then returned to his prison

unit, where he was harassed by other inmates for seeking help from the guards.  (*Id*. at

12.)  After being moved to a different unit, Plaintiff tried calling the inmate hotline, but it

was out of service.  (*Id*. at 12.)

The following day, Plaintiff spoke with a detective about what had occurred.  (*Id*.)

Plaintiff was returned to his unit that night, back to the same cell where he had been

sexually assaulted days earlier.  (*Id*.)  When Plaintiff told the commanding officer that he

did not want to return to that cell, the officer informed him that he would be placed in

isolation if he refused to move.  (*Id*. at 13.)  After Lake was returned to the general prison

population, Plaintiff filed an emergency grievance stating that he did not want to go back

to the general population because he was scared of retaliation from Lake.[3]  (*Id*.)  In response to his grievance, Plaintiff was told that it was not an emergency issue and that nothing could be done.  (*Id*. at 13-14.)  At this point, Plaintiff was moved to "Hotel unit," where he was still harassed "constantly" by other inmates.  (*Id*. at 14.)  On or about March 10, 2012, Plaintiff was told that he would be returning to "Gulf Unit," the same housing unit as Lake.  Plaintiff filed multiple grievances regarding this placement, claiming he was suffering "horrible flashbacks" as a result of his placement.  (Doc. 5-1.)  Correctional staff responded that Plaintiff was in "a restricted unit" and was therefore "safe."  (*Id*.)[4]

Plaintiff filed the Complaint in this case on July 30, 2012.  (Doc. 5.)  Therein, Plaintiff alleges that Defendants breached their Eighth Amendment duty "to provide for the safety of inmates" by disregarding a substantial risk of harm to Plaintiff.  (*Id*. at 17.)  As redress, Plaintiff seeks a declaration that the actions taken by Defendants violated the Constitution, compensatory damages of $800 from each Defendant, punitive damages of $250,000 from each Defendant, and costs of bringing suit.  (*Id*. at 19.)

---

[3]  Appended to Plaintiff's Complaint is an emergency grievance submitted on July 11, 2012, approximately eight months after the alleged sexual assault, in which Plaintiff claimed that officers brought Lake into his unit during recreation, which caused him to "relive the trauma all over again." (Doc. 5-1 at 2.)  Also attached to the Complaint is an "informal complaint & plan for resolution form," also filed July 11, 2012, in which Plaintiff alleged that this had been done in "retaliation" because of his correspondence with legal aid concerning his treatment by corrections officials.  (Doc. 5-1 at 1.)  Plaintiff also filed, as a supplemental document, a grievance form filed on July 13, 2012 raising the same issue as the earlier complaint.  (Doc. 10-1.)

[4]  Plaintiff has since been transferred to the Northern State Correctional Facility.  (Doc. 22.)

## <u>Discussion</u>

### I.    **Legal Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As explained in *Iqbal* and *Twombly*, this does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* In reviewing the pleadings, the court must accept factual assertions as true, but this presumption of truth "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Still, the Second Circuit has held that neither *Iqbal* nor *Twombly* impose "heightened" pleading standards. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119-21 (2d Cir. 2010) (rejecting a "heightened pleading standard" under *Iqbal/Twombly* and also rejecting the "contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible.").

The court has the added obligation in this case to "construe a *pro se* complaint liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), by "reading such submissions 'to raise the strongest arguments they suggest.'" *Berlin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). This admonition applies with particular force when, as here, a plaintiff's civil rights are at issue. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). *Pro se* litigants, however, "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV. 9353, 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see Bowman v. Waterside Plaza, L.L.C.*, No. 07 Civ. 239, 2010 WL 2873051, at *4 (S.D.N.Y. July 21, 2010) ("the 'plausibility' standard articulated in *Twombly* and *Iqbal* applies to the pleadings of *pro se* plaintiffs.").

As noted above, Plaintiff has not filed a response to Defendants' Motion to Dismiss. Nonetheless, a plaintiff's failure to oppose a Rule 12(b)(6) motion does not by itself merit dismissal of a complaint. *See Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010); *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000). "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Goldberg*, 599 F.3d at 184 (citing *McCall*, 232 F.3d at 322-23).

## II.    Eleventh Amendment Sovereign Immunity

Defendants first argue for dismissal of all claims brought against them in their official capacities, maintaining that, to whatever extent they have been sued in such capacities (which is not clear from the face of the Complaint), they are immune from suit under the Eleventh Amendment to the United States Constitution.  (Doc. 17 at 3-5.)

State officials cannot be sued for actions taken in their official capacities unless the State itself has consented to suit.  This principle of sovereign immunity is embodied in the Eleventh Amendment, which provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, the Supreme Court has extended the immunity beyond the explicit language of the amendment, thereby protecting a state from suit by its own citizens.  *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890).  Quite simply, federal jurisdiction over suits against unconsenting states or state officials "was not contemplated by the Constitution when establishing the judicial power of the United States."  *Id.*  As a result, the Eleventh Amendment bars suits by private citizens against a state, its officials, or its agencies in federal court unless the state has waived immunity or Congress has properly abrogated

that immunity.[5]  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-99

(1984).  The test for waiver is stringent: a state's waiver of Eleventh Amendment

immunity must be unequivocally expressed.  *Atascadero State Hospital v. Scanlon*, 473

U.S. 234, 238 n.1 (1985).

This case thus presents a two-fold question: whether Defendants are properly

entitled to the protection of Vermont's sovereign immunity, and, if so, whether the State

has consented to suit.  Defendants are undoubtedly state officials acting in their official

capacity and, as such, are entitled to the protection of sovereign immunity.  Defendant

Pallito was the Commissioner of the DOC during the events forming the basis of the

Complaint, and the remaining Defendants were officials stationed at SSCF.[6]  To the

extent Plaintiff brings claims against these state officials for actions taken in their official

capacity, such claims are barred by the Eleventh Amendment.  *See Woods v. Rondout

Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (Eleventh

Amendment immunity "extends beyond the states themselves to state agents and state

instrumentalities that are, effectively, arms of a state" (internal quotation omitted)).  "It is

only when the state official is sued and held liable in his individual capacity that the suit

---

[5] Congress may abrogate Eleventh Amendment immunity pursuant to Section 5 of the Fourteenth Amendment, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976), but it has not done so in any way relevant to this case.  It is well settled that Congress did not intend to abrogate sovereign immunity by the enactment of § 1983.  *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979).

[6] Specifically, Defendant Mickel was the Living Unit Supervisor, Defendant Rutheford was in charge of security, and Defendant Potanas was the Superintendent at the facility.  (Doc. 5 at 2-3; Doc. 17 at 3.)

may lie." *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988) (citing *Papasan v. Allain*, 478 U.S. 265, 278 & n.11 (1986)).[7]

Because Defendants are protected by sovereign immunity, the State must have consented to suit for Brady's case to go forward. Vermont has not, however, waived immunity from a § 1983 suit in federal court. Indeed, the State has expressly preserved its Eleventh Amendment immunity. *See* 12 V.S.A. § 5601(g). Accordingly, the claims against Defendants in their official capacities should be DISMISSED.[8]

## III. Failure to Exhaust

Next, Defendants argue that Plaintiff has failed to exhaust his administrative remedies as required by the PLRA. According to Defendants, this failure to exhaust is fatal to the entirety of Plaintiff's claims against them.

The PLRA, both by its terms and interpretation of the United States Supreme Court, imposes an exacting exhaustion requirement on all prisoners filing lawsuits under federal law. According to the statute, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

---

[7] The exception set out in *Ex Parte Young*, 209 U.S. 123 (1908)—in which the Supreme Court held that sovereign immunity did not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law—does not apply in the circumstances of this case because Plaintiff has not sought such relief and has alleged no ongoing violation of federal law. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Instead, Plaintiff seeks only a retrospective declaratory relief (i.e., a "declaration that the acts and omission described [in the Complaint] violated plaintiff[']s rights under the Constitution" (Doc. 5 at 19)), as well as compensatory damages, punitive damages, and costs. *Ex Parte Young* does not abide such a suit.

[8] It also bears mention that, as a matter of statutory construction, neither a state nor its officials acting in their official capacities are "persons" under the terms of § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The operative phrase "prison conditions" refers to "all inmate suits about prison life," regardless of whether these suits refer to general conditions applicable to all inmates or, as here, specific episodes applicable to only the inmate bringing suit. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandatory, *see Jones v. Bock*, 549 U.S. 199, 211 (2007), and must be "proper," *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This means that, to bring a claim in federal court, an inmate must "compl[y] with the [correctional facility's] critical procedural rules" applicable to administrative grievances because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given fair opportunity to consider the grievance." *Macias v. Zenk*, 495 F.3d 37, 41 (2d Cir. 2007) (internal quotations omitted).

Because proper exhaustion is determined by assessing whether an inmate fully complied with the facility's grievance rules, this court must look to the Vermont DOC grievance procedure to discern whether Plaintiff "exhausted" those remedies.

> In Vermont, the DOC's grievance procedure allows an inmate to first lodge an informal complaint, either orally or in writing. If the situation is not resolved to the inmate's satisfaction within 48 hours, he may begin the formal grievance process. That process requires a DOC staff member to investigate and recommend a resolution to a supervisor. If the supervisor agrees, the resolution is reported to the inmate, who may then appeal to the facility superintendent if still not satisfied. . . . The facility superintendent may support the resolution, modify it, or reject it. If the superintendent's reply is not satisfactory to the inmate, additional levels of appeal are available that eventually reach the Commissioner. The Commissioner is the final arbiter of inmate grievances.[9]

---

[9] The court takes judicial notice of this grievance procedure, as it is "generally known" in this jurisdiction, and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Christian v. Skinner*, 468 F.2d 723, 726 (2d

*LaBombard v. Burroughs-Biron*, No. 2:09-CV-136, 2010 WL 2264973, at *3 (D. Vt. Apr. 30, 2010) (Conroy, Mag. J.), *adopted in full*, 2010 WL 2265004 (D. Vt. June 2, 2010). Again, PLRA exhaustion demands that Brady follow each of these steps, "and do[] so properly," before filing a federal lawsuit. *Woodford*, 548 U.S. at 90. This means that Plaintiff must have appealed his grievance all the way to the DOC Commissioner to have exhausted his remedies as required by the PLRA.[10]

According to allegations in the Complaint, Plaintiff "filed an emergency grievance" regarding his housing placement and was "told that it was not an emergency issue." (Doc. 5 at 3.) The documents appended to the Complaint bear this out, demonstrating that Plaintiff filed an initial informal complaint (Doc. 5-2), which he followed with a formal grievance (Doc. 5-1). Two days after the disposition of his formal grievance, Plaintiff completed the third step in the grievance procedure by filing an appeal to the facility superintendent.[11] (Doc. 10-1.) This appeal was returned to

---

Cir. 1972) (taking judicial notice of state prison rules and regulations). Where judicial notice is properly taken, conversion of a motion to dismiss to a motion for summary judgment is not required. *See Burton v. Lynch*, 664 F. Supp. 2d 349, 357 (S.D.N.Y. 2009) ("In reviewing a complaint, a court is not limited to the four corners of the complaint; a court may also consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" (quoting *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993))).

[10] The failure to exhaust is an affirmative defense, and the burden is on Defendants to show that Plaintiff failed to meet the exhaustion requirements. *See Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *Douglas v. Skellie*, No. 9:07-CV-80, 2009 WL 935806, at *5 (N.D.N.Y. April 3, 2009). While dismissal may be appropriate on a motion to dismiss if the allegations in the complaint establish failure to exhaust, the complaint need not specially plead or demonstrate exhaustion. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Here, Plaintiff's non-exhaustion is apparent on the face of the Complaint, as well as the supplemental documents filed by Plaintiff.

[11] For the sake of precision, the third step in the grievance procedure actually calls for appeal either to the facility superintendent, the district manager, or an "OOS Supplemental Housing Manager."

Plaintiff on July 26, 2012 (Doc. 10-1 at 2), and Plaintiff filed the instant Complaint on July 30, 2012 (Doc. 5). As Defendants point out, Plaintiff has not alleged that he appealed to the DOC Commissioner in the interim. Therefore, despite Plaintiff's filing of numerous grievance forms (including the antepenultimate step of appealing to the facility superintendent), he has failed to complete the grievance process, and thus has failed to exhaust his administrative remedies as contemplated by the PLRA.

Plaintiff has not alleged any reason for the court to excuse this failure to exhaust. In *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), the Second Circuit established a three-part inquiry to guide the analysis of whether a failure to exhaust may be excused. First, failure to exhaust can be excused where administrative remedies were not, in fact, available to the prisoner at the time of the incident. *Id.* at 686. Second, if those remedies were available, "the court should . . . inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and defendants are not estopped from raising the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Id.* (citations and internal quotations omitted). Such "special circumstances" include a "reasonable

---

Because the signature on Plaintiff's grievance form is illegible, it is impossible to know which of these three officials decided the appeal. (Doc. 10-1 at 2.)

misunderstanding of the grievance procedures." *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).[12] Applying this framework to the instant case, as stated above, Plaintiff has made no factual allegations in his Complaint that would excuse his failure to exhaust.[13] All claims against Defendants should therefore be DISMISSED on this basis.

## IV. Personal Involvement

Defendants next maintain that the claims against them should be dismissed for Plaintiff's failure to allege their personal involvement in the claimed constitutional violations.

---

[12] The Second Circuit has yet to rule on whether *Hemphill* remains good law following the Supreme Court's decision in *Woodford* that a prisoner must comply with all of a prison's grievance procedures before seeking relief in federal court. 548 U.S. at 81; *see Amador v. Andrews*, 655 F.3d 89, 102-03 (2d Cir. 2011) (declining to reach the issue because appellant failed to establish that the defendants were estopped from raising exhaustion as a defense or that "special circumstances" existed); *Macias v. Zenk*, 495 F.3d 37, 43 n.1 (2d Cir. 2007) (declining to reach issue). Courts in this circuit have acknowledged the tension between the two cases, but have still continued to apply *Hemphill. See, e.g.*, *Rivera v. Anna M. Kross Ctr.*, No. 10 Civ. 8696, 2012 WL 383941, at *3 n.1 (S.D.N.Y. Feb. 7, 2012) (citing *Harrison v. Goord*, No. 07 Civ. 1806, 2009 WL 1605770, at *6 n.6 (S.D.N.Y. June 9, 2009); *Winston v. Woodward*, No. 05 Civ. 3385, 2008 WL 2263191, at *6 (S.D.N.Y. May 30, 2008)).

[13] Plaintiff's sole statement implicating any possible excuse is his statement that he declined to contact the superintendent after the inmate hotline was out of service "because [he] felt like [he] wouldn't be taken seriously." (Doc. 5 at 5.) Setting aside that Plaintiff does not himself relate this justification to his failure to appeal his grievance, such an allegation is insufficient to excuse the failure to exhaust administrative remedies. While the Second Circuit takes a functional approach to the question of the availability of grievance procedures, *see Hemphill*, 380 F.3d at 687, the test for availability remains "an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available," *id.* at 688 (internal quotation marks omitted). As such, an inmate's unilateral expression of the futility of filing a grievance is insufficient to negate the PLRA's exhaustion requirement and absolve him of the failure to exhaust. *See Shariff v. Coombe*, 655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009) (inmate's perception of futility insufficient to excuse his failure to exhaust); *Harrison v. Goord*, No. 07 Civ. 1806, 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009) (inmates are required to exhaust their remedies "even if they believe that administrative remedies would be ineffective or futile"); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (construing PLRA, Court stated that it would not "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"). Thus, despite Plaintiff's possible perception that filing a grievance would have been ineffective, administrative remedies remained available to him for the purposes of the PLRA, and he was required to exhaust those remedies before filing a claim in this court.

It is well-established in the Second Circuit that a prison official cannot be held personally liable under § 1983 on the basis of *respondeat superior* or simply because he or she sits atop the prison hierarchy. *See Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Direct participation, however, is not strictly necessary. Personal involvement can be shown by

> evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.[14]

Plaintiff's Complaint alleges no personal involvement on the part of Defendant Pallito, the DOC Commissioner. Plaintiff has not alleged the direct involvement of Pallito in the constitutional violation, the creation of a policy or custom under which the violation occurred, or the grossly negligent supervision of the responsible officials. Other than the caption of Plaintiff's Complaint, the sole mention of this Defendant in the

---

[14] There is disagreement within the Second Circuit as to whether the Supreme Court's decision in *Iqbal* abrogated any of the *Colon* categories of supervisor liability. *See Morrissette v. Cripps*, No. 10 Civ. 8795, 2011 WL 4089960, at *2 (S.D.N.Y. Sept. 14, 2011) (recognizing disagreement); *see generally* Desiree L. Grace, Comment, *Supervisory Liability Post-Iqbal: A "Misnomer" Indeed*, 42 Seton Hall L. Rev. 317 (2012). Given the absence of any Second Circuit decision specifically overturning *Colon*, this court continues to treat it as good law.

Complaint is that he, along with Defendant Potanas (the facility superintendent), "failed to act when [he] knew of a substantial risk of serious harm" to Plaintiff. (Doc. 5 at 17.) Plaintiff has alleged no factual predicate for this conclusion. In other words, Plaintiff has not suggested any way (e.g., by the filing of a grievance appeal) that Defendant Pallito could have been made aware of any risk of harm.[15] As a result, Defendant Pallito had no personal involvement in the constitutional violations at issue, and the claims against him should be DISMISSED on this basis.

As to the remaining Defendants, each is either identified by name as involved in the alleged violation or (may have) received a grievance making him aware of the violation. *See supra* n.11, 15. In arguing that none of the Defendants were personally involved in the alleged violation, Defendants maintain that "[s]ince [Plaintiff's] Complaint does not implicate a federal right, he has failed to allege that any Defendant was personally involved in unconstitutional conduct." (Doc. 17 at 7.) This may be true, but it entirely misses the mark. Defendants confuse the merits of the underlying claim with the threshold question of personal involvement. The issue, at this juncture, is whether, *assuming a constitutional violation has taken place*, Plaintiff has alleged sufficient personal involvement of the named Defendants to hold them personally

_____

[15] This is in contrast to Defendant Potanas, the facility superintendent, who may have resolved Plaintiff's appeal of his initial grievance. The signature on the grievance form (Doc. 10-1 at 2) is entirely unreadable, making it impossible for this court to discern whether Potanas was the official who decided Plaintiff's appeal. In light of the deference due at this stage of the proceeding, this court assumes that Potanas resolved the grievance and was thus aware of the conduct at issue. As a result, accepting Plaintiff's allegations as true, Potanas was aware of the problem and failed to stop it, rendering him personally involved in the claimed violation under *Colon*. *See Bussey v. Phillips*, 419 F. Supp. 2d 569, 590 (S.D.N.Y. 2006) ("review of an inmate's case does constitute personal involvement"); *Anderson v. Ford*, No. 06-CV-1968, 2007 WL 3025292, at *7 (D. Conn. Oct. 16, 2007) ("Personal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews or responds to a prisoner's complaint").

responsible for the alleged violation.  Of course, Plaintiff's claim also fails on its merits, see infra, but that does not foreclose that personal involvement has been sufficiently alleged to survive this aspect of Defendants' Motion.  And, as to Defendants Potanas, Rutheford, and Mickel, Plaintiff has done so.

## V.    Physical Injury

Defendants next argue that Plaintiff's claim should be dismissed because he has failed to allege physical injury as required for a recovery of compensatory damages.

The PLRA provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).[16]  Because the statutory phrase "Federal civil action" is unqualified, the statute "applies to all federal civil actions including claims alleging constitutional violations." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002); *see also Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (reasoning that "§ 1997e(e) precludes claims for emotional injury without any prior physical injury, regardless of the statutory or constitutional basis of the legal wrong").  This section is not a bar to suit, but instead operates only as "a limitation on recovery of damages for mental and emotional injury in the absence of a showing of physical injury."  *Thompson*, 284 F.3d at 416.  In *Thompson*, the court also made clear that § 1997e(e) "does not restrict a plaintiff's ability to recover

---

[16]   The purpose of § 1997e(e) was "to tie recovery for emotional injury to the existence of a corresponding physical injury.  It seems that Congress concluded that the existence of a physical injury would distinguish meritorious prisoner claims of emotional injury from frivolous ones; the physical injury would, in essence, vouch for the asserted emotional injury.  Congress recognized that, unlike physical injuries, emotional injuries are inherently difficult to verify and therefore tend to be concocted for frivolous suits."  *Espinal v. Goord*, No. 00 Civ. 2242, 2001 WL 476070, at *12 (S.D.N.Y. May 7, 2001).

compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." *Id.* As to the extent of physical injury required for recovery of compensatory damages, the statute provides little guidance, given the absence of a definition for the phrase "physical injury"; the Second Circuit, however, has held that the statute refers to physical injuries that are "more than *de minimis*." *See Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999); *see also Warren v. Westchester County Jail*, 106 F. Supp. 2d 559, 570 (S.D.N.Y. 2000) ("Although the [PLRA] does not define 'physical injury,' the developing case law in this area reflects the view that, consistent with Eighth Amendment jurisprudence, the predicate injury need not be significant but must be more than *de minimis*.").

As a starting point, I observe that the relief requested by Defendants—that the claim be dismissed in its entirety due to Plaintiff's failure to allege physical injury (Doc. 17 at 2)—cannot be indulged. Despite the wording of § 1997e(e) (that "[n]o Federal civil action *may be brought*"), the statute does not bar suit altogether, but instead operates solely as a limitation on damages. *See Thompson*, 284 F.3d at 418 ("Section 1997e(e) purports only to limit recovery for emotional and mental injury, not entire lawsuits"); *see also Lipton v. County of Orange*, 315 F. Supp. 2d 434, 457 (S.D.N.Y. 2004). In other words, the statute limits types of relief, not causes of action. As such, dismissal is not a proper remedy for a failure to allege physical injury. Even assuming Defendants were correct that Plaintiff has failed to allege physical injury, his request for punitive damages and declaratory relief could still go forward.

But this distinction is of little consequence here, as physical injury is apparent on the face of the Complaint. By Plaintiff's description, Defendants violated their Eighth Amendment duty "to provide for the safety of inmates" by disregarding a substantial risk of harm to Plaintiff. (Doc. 5 at 17.) It is unclear whether Plaintiff has filed suit because of the failure of Defendants to keep him safe from the initial sexual assaults by his cellmate Bubba Lake, or because of his subsequent housing reassignment which he alleges put him in fear of his physical safety because of a proximity to Lake. Given the liberal reading owed this *pro se* Complaint, I conclude that Plaintiff has brought his claim under both theories. As to the claim of failure to protect from the sexual assaults, despite the omission of specific references to physical injuries suffered from the assaults, Plaintiff's allegation of sexual assault constitutes sufficient "physical injury" as contemplated by the PLRA. *See Liner*, 196 F.3d at 135 ("[A]ccepting the allegations in the complaint, the alleged sexual assaults qualify as physical injuries as a matter of common sense. Certainly, the alleged sexual assaults would constitute more than *de minimis* injury if they occurred."); *Kemner v. Hemphill*, 199 F. Supp. 2d 1264, 1270 (N.D. Fla. 2002) ("Surely Congress intended the concept of 'physical injury' in § 1997e(e) to cover such a repugnant use of physical force."); *Marrie v. Nickels*, 70 F. Supp. 2d 1252, 1264 (D. Kan. 1999) ("sexual assaults would qualify as physical injuries under § 1997e(e)").

While I am recommending that this case be dismissed for other reasons, because Plaintiff alleges physical injury that is more than *de minimis*, I recommend that the Defendants' Motion to Dismiss be denied on the asserted basis of lack of physical injury.

Similarly, were it not for fact that the case should be dismissed for other reasons, the court should deny that portion of the Defendants' Motion seeking to limit Plaintiff's recovery of damages for failure to allege physical injury.

**VI.    Eighth Amendment**

Finally, Defendants maintain that Plaintiff's claim fails because, even accepting his allegations as true, he has failed to state a viable Eighth Amendment claim.

Section 1983 of Title 42 of the United States Code "establishes liability for deprivation under the color of state law 'of any rights, privileges, or immunities secured by the Constitution.'" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting 42 U.S.C. § 1983). Accordingly, to succeed on a claim for violation of civil rights under 42 U.S.C. § 1983, a plaintiff must show that "state officials, acting under color of state law, deprived [him] of a right guaranteed to [him] by the Constitution." *Rodriguez v. Phillips*, 66 F.3d 470, 473 (2d Cir. 1995).

As stated, Plaintiff's Complaint can be liberally read to raise two distinct Eighth Amendment claims: (1) Defendants violated the Eighth Amendment when they failed to protect Plaintiff from the initial sexual assault from his cellmate; and (2) Defendants violated the Eighth Amendment when they subsequently moved Plaintiff into the same housing unit as his assailant, placing him in fear for his safety. I address each in turn.

**A.    Failure to Protect from Sexual Assault**

It has long been held that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation omitted). Prison conditions may be harsh, but that does not give

license to prison officials to allow the gratuitous beating or rape of one prisoner by another, as such conduct serves no "legitimate penological objective[e]." *Hudson v. Palmer*, 468 U.S. 517, 548 (1984) (Stevens, J., concurring in part and dissenting in part). The Eighth Amendment's prohibition on cruel and unusual punishment does not condone the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 32, 319 (1986). Thus, "the failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment." *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985).

That said, every assault on an inmate by a fellow prisoner does not give rise to constitutional sanction for prison officials. The Eighth Amendment demands that the official have a sufficiently culpable state of mind—termed "deliberate indifference"—for a constitutional violation to have occurred.[17] *See Farmer*, 511 U.S. at 834-35. The Supreme Court has explained that this standard is most similar to the recklessness standard imposed in criminal contexts. Under this deliberate indifference standard, an Eighth Amendment violation only occurs when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. In the context of the duty to protect, "correctional staff would be on notice of a substantial risk of serious harm where there

---

[17] In addition to the state of mind requirement, the Eighth Amendment also demands that the deprivation at issue be "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. This requirement will be addressed in the next section, *see infra*, but it bears mention that the sexual assaults at issue no doubt meet this objective portion of the Eighth Amendment inquiry.

has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept separated." *Goode v. Faneuff*, No. 3:04-CV-1524, 2008 WL 3360833, at *2 (D. Conn. Aug. 8, 2008) (citing *Ayers*, 780 F.2d at 209); *see also Farmer*, 511 U.S. at 842-43 (correctional staff would be on notice of a substantial risk of harm if there was a "longstanding, pervasive, well-documented" history of inmate attacks and staff had been exposed to that information).

Plaintiff's Complaint is devoid of any allegation that prison officials were aware of a risk of harm to Plaintiff when they placed Lake in his cell in November 2011. There is no allegation that any prior assaults or threats between the two inmates had previously taken place, or that Plaintiff requested that Lake be removed from his cell out of a fear for his safety. Absent such allegations, no showing has been made that Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff's safety prior to the November 2011 sexual assaults. Defendants cannot be held responsible for inmate assaults that they had no reason to think would occur.

Accordingly, any Eighth Amendment claim against Defendants for their failure to protect Plaintiff from the sexual assaults by his cellmate should be DISMISSED.

### B.    Housing Reassignment

Plaintiff's claim regarding his subsequent placement in the same housing as his assailant also implicates Defendants' responsibility to take "reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. The claim fails, however, on the other prong of the Eighth Amendment analysis. In addition to the subjective state of mind requirement discussed above, a showing of deliberate indifference under the

Eighth Amendment also demands that an inmate establish that he has suffered objectively serious injury so as to deny him "the minimal civilized measure of life's necessities." *Id.* at 834. Here, Plaintiff fails to plead facts establishing this element of deliberate indifference, i.e., that the harm suffered was sufficiently serious to constitute an Eighth Amendment violation. Although Plaintiff repeatedly alleges that the housing placement put him in danger, the sole harm alleged is that he had "horrible flashbacks" and was "mentally tormented over and over again." (Doc. 5-1 at 1.) Significantly, Plaintiff has not alleged that Lake attacked him again after the new housing placement, or that any other physical attack by any inmate took place. In other words, Plaintiff does not allege that Defendants failed to prevent a harm, but rather, that Defendants failed to prevent Plaintiff from being exposed to a risk of harm.

The mere fear of an assault, however, does not constitute a sufficiently serious injury to state a claim under the Eighth Amendment. *See Dawes v. Walker*, 239 F.3d 489, 494 (2d Cir. 2001) (dismissal of a failure to protect claim affirmed, where plaintiff did not allege he was assaulted by other inmates); *Cruz v. Hillman*, No. 01 CIV. 4169, 2002 WL 31045864, at *8-9 (S.D.N.Y. May 16, 2002) (allegations of a risk of harm are insufficient to meet objective requirement of Eighth Amendment); *Hudson v. Greiner*, No. 99 Civ. 12339, 2000 WL 1838324 at *7 (S.D.N.Y. Dec. 13, 2000) (plaintiff's allegation that the prison administration knew that placing plaintiff in the general prison population could lead to his being injured, without an allegation of physical injury, was insufficient to state an Eighth Amendment claim); *Bolton v. Goord*, 992 F. Supp. 604, 627 (S.D.N.Y. 1998) (evidence that plaintiffs "lived in fear of assault from their

cellmates is not an objectively serious enough injury" to support an Eighth Amendment

violation); *see also Doe v. Welborn*, 110 F.3d 520, 524 (7th Cir. 1997) (fear of assault

was not "the kind of extreme and officially sanctioned psychological harm that might

support a claim for damages under the Eighth Amendment"). As these cases

demonstrate, "[h]owever legitimate [the plaintiff prisoner's] fears may have been, . . . it is

the reasonably preventable assault itself, rather than any fear of assault, that gives rise to

a compensable claim under the Eighth Amendment." *Babcock v. White*, 102 F.3d 267,

272 (7th Cir. 1996). Therefore, without any subsequent assault, Plaintiff's claim is not

cognizable.

Because Plaintiff has not adequately alleged that he suffered serious injury as to

his second constitutional claim, this claim should be DISMISSED.

## VII.   Leave to Amend

In the Second Circuit, district courts should not dismiss *pro se* complaints with

prejudice "without granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927

F.2d 698, 705 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) (stating "the court should

freely give leave when justice so requires"); *Foman v. Davis*, 371 U.S. 178, 182

(generally, permission to amend should be freely granted). Nonetheless, leave to amend

may be denied when an amendment would be futile. *See Ruotolo v. City of New York*,

514 F.3d 184, 191 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is

appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202,

216 (2d Cir. 2008). Because I cannot rule out the possibility that an amendment will result in a claim being successfully pleaded, I recommend that Plaintiff be given an opportunity to amend his Complaint.

I further recommend requiring that, if Plaintiff chooses to submit an amended filing, it shall be entitled "Amended Complaint" and shall contain all claims against all parties, as it will supersede the original Complaint in all respects. The court should also require that the amended complaint be filed within thirty days of its ruling on this Report and Recommendation. Failure to so amend should result in the dismissal of all claims with prejudice.

## Conclusion

For the reasons set forth above, I recommend that Defendants' Motion to Dismiss (Doc. 17) be GRANTED, and the case be DISMISSED without prejudice. I further recommend that, if this Report and Recommendation is adopted by the court, Plaintiff be allowed thirty days to file an amended complaint. Failure to file an amended complaint should result in the dismissal of the case with prejudice.

Dated at Burlington, in the District of Vermont, this 17th day of December, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).