UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

William Lefebvre,

    Plaintiff,

    v.                                      Civil Action No. 5:12-CV-163

Andrew Pallito, Adam Mickel,
Mark Potanas, Joshua Rutheford,[1]

    Defendants.

## REPORT AND RECOMMENDATION
(Doc. 30)

Plaintiff William Lefebvre, an inmate in the custody of the Vermont Department of Corrections ("DOC"), brings this action *pro se* under 42 U.S.C. § 1983 claiming that Defendants Adam Mickel, Mark Potanas, and Joshua Rutheford failed to protect him from harm from another inmate during his incarceration.[2] (Docs. 5, 27.) Defendants previously filed a Motion to Dismiss for failure to state a claim (Doc. 17), which the district court granted, while permitting Lefebvre leave to amend (Docs. 23, 29). Upon the filing of Lefebvre's Amended Complaint (Doc. 27), Defendants again seek dismissal (Doc. 30). Having received a response in opposition from Lefebvre (Doc. 31), the motion is now ripe for decision.

---

[1] Defendant Rutheford's name is alternatively spelled "Rutherford" and "Rutheford" in the record. Herein, for the sake of consistency, I use the spelling preferred by Lefebvre, "Rutheford."

[2] Vermont Commissioner of Corrections Andrew Pallito was listed as a Defendant in the original Complaint (Doc. 5 at 1), but was removed from the suit by the filing of Lefebvre's Amended Complaint (Doc. 27 at 1).

For the reasons set forth below, I recommend that the Motion to Dismiss (Doc. 30) be GRANTED, and the case be DISMISSED.

## Facts and Procedural Background

For purposes of deciding Defendants' Motion to Dismiss, the facts alleged in the Complaint and Amended Complaint are accepted as true. The thrust of the factual allegations remain in the original Complaint (Doc. 5); the short, six-page Amended Complaint merely identifies each of the three Defendants and details how they were "personally involved" in the sequence of events giving rise to Lefebvre's case (Doc. 27).[3]

Lefebvre, an inmate at the Southern State Correctional Facility ("SSCF") at the time of the events in question,[4] alleges that over the course of several days—approximately November 10, 2011 to November 14, 2011—he was sexually assaulted by his cellmate, Bubba Lake. According to Lefebvre, after Lake moved into his cell on or about November 10, 2011, Lake repeatedly demanded Lefebvre perform oral sex on him. (Doc. 5 at 8.) Lefebvre rebuffed Lake's advances, but "[t]he more [Lefebvre] said no, the angr[ier] [Lake] got." (*Id*.) Lake told Lefebvre that "the only way he would leave [Lefebvre] alone" was if he gave in. (*Id*. at 9.) Lefebvre eventually relented and performed oral sex on Lake because he "felt that if [he] didn't cooperate [he] would be

---

[3] As such, Lefebvre's Amended Complaint runs headlong into the requirements of Local Rule 15, which bars incorporation by reference of any prior filing "without prior authorization of the court." Local Rule of Procedure 15. Despite the deficiencies of his Amended Complaint and the fact that I specifically alerted Lefebvre to this requirement in a prior Report and Recommendation—including the admonition that his amended complaint "shall contain all claims against all parties, as it will supersede the original Complaint in all respects" (Doc. 23 at 24)—I will give the amendment a liberal reading and assume that its factual allegations are intended to supplement those detailed in the original Complaint.

[4] Lefebvre has since been transferred to a new facility. (Doc. 22.)

2

physical[l]y hurt." (*Id*.)  The same course of events transpired the following day.  Two nights later, on or about November 13, 2011, Lake told Lefebvre that he wanted to perform anal sex on Lefebvre.  (*Id*. at 10.)  When Lefebvre refused, Lake "started getting mad and punching the walls."  (*Id*.)  Lake again threatened violence, telling Lefebvre that he had to participate or he "would get hurt."  (*Id*.)  Lefebvre was "really scared," and thus allowed Lake to perform anal sex on him.  (*Id*. at 10-11.)

      Lefebvre notified "COI Hayes" who then relayed the information to Defendant Mickel.[5]  (*Id*. at 7.)  Lefebvre also reported the sexual assault to Mickel himself about thirty minutes after telling Hayes.  (Doc. 27 at 1.)  After these disclosures, Lake was moved to restrictive housing and Lefebvre met with Defendant Rutheford.  (Doc. 5 at 7-8.)  Lefebvre relayed the sequence of events to Rutheford, telling him about how Lake had "persist[e]ntly pr[od]ded [him] about giving him oral sex and other sexual acts while in the same cell together" and about his fear that Lake "was going to do [him] physical harm" if he did not agree to perform the acts in question.  (Doc. 27 at 2.)  After this conversation with Rutheford, Lefebvre was "sent to see Ruth Kibby from mental health."  (Doc. 5 at 11.)  Lefebvre told Kibby that he feared for his safety because he had gone to the commanding officer for help and because his complaints to facility staff would not be taken seriously.  (*Id*.)  He was then sent to the facility's medical unit, where he requested to be taken to the hospital.  (*Id*.)  The nurse informed him that "there was no point" in going to the hospital because he had already showered and brushed his teeth.  (*Id*.)  At

---

[5] Lefebvre has filed an affidavit from a fellow inmate who was present during the report to Hayes.  (Doc. 11.)

that point, Lefebvre was returned to his prison unit, where he was harassed by other inmates for seeking help from the guards. (*Id.* at 12.) After being moved to a different unit, Lefebvre tried calling the inmate hotline, but it was out of service. (*Id.* at 12.)

The following day, Lefebvre spoke with a detective about what had occurred. (*Id.*) Later that evening, Lefebvre was returned to the same cell where he had been sexually assaulted days earlier. (*Id.*) When Lefebvre told the commanding officer that he did not want to return to that cell, the officer informed him that he would be placed in isolation if he refused to return to his cell. (*Id.* at 13.) After Lefebvre's alleged attacker, Lake, was removed from segregation and returned to the general prison population, Lefebvre filed an emergency grievance stating that he did not want to return to the general population himself because he feared retaliation from Lake. (*Id.*) In response, Lefebvre was told that it was not an emergency issue and that nothing could be done. (*Id.* at 13-14.) At this point, SSCF officials transferred Lefebvre to "Hotel unit," where he was still harassed "constantly" by other inmates. (*Id.* at 14.) On or about March 10, 2012, Lefebvre was told that he would be returning to Gulf Unit, the same housing unit as Lake. Lefebvre filed multiple grievances regarding this placement, claiming he was suffering "horrible flashbacks" as a result of his placement. (Doc. 5-1.) Correctional staff responded that Lefebvre was in "a restricted unit" and was therefore

"safe." (*Id.*)  Lefebvre notes that he appealed these decisions to Potanas, who denied his requests for relief.  (Doc. 27 at 3.)[6]

Lefebvre filed the Complaint in this case on July 30, 2012.  (Doc. 5.)  Therein, Lefebvre alleged that Defendants breached their Eighth Amendment duty "to provide for the safety of inmates" by disregarding a substantial risk of harm to Lefebvre.  (*Id*. at 17.)  As redress, Lefebvre seeks: (1) a declaration that the actions taken by Defendants violated the Constitution; (2) compensatory damages of $800 from each Defendant; (3) punitive damages of $250,000 from each Defendant; and (4) costs of bringing suit.  (Doc. 5 at 19; Doc. 27 at 5.)

Defendants moved to dismiss the original Complaint.  (Doc. 17.)  In a Report and Recommendation on the motion, I recommended dismissal, with leave to amend, because Defendants were entitled to sovereign immunity under the Eleventh Amendment, Lefebvre had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), and Lefebvre's Eighth Amendment claims failed on their merits.  (Doc. 23.)  In adopting the Report and Recommendation in part, the district court agreed that Lefebvre's claim was barred by sovereign immunity and his failure to exhaust, but, having thus disposed of the entirety of the case, declined to address the merits.  (Doc. 29.)  Having received leave to amend, Lefebvre filed a short supplement to his Complaint, dismissing Pallito as a Defendant and outlining the extent of the personal involvement of the three remaining Defendants.

---

[6] Lefebvre also claims in his Amended Complaint that all of his grievances have "come up missing or were not filed properly" by staff at SSCF.  (Doc. 27 at 4.)  Despite these assertions, Lefebvre has managed to file multiple grievance forms with this court.  (Doc. 5-1; Doc. 5-2; Doc. 10-1; Doc. 10-2.)

5

Defendants have now filed another Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), in which they argue that Lefebvre's claim should be dismissed for his failure to satisfy the PLRA's exhaustion requirement and because Lefebvre's Eighth Amendment claims fail on their merits. (Doc. 30.) Lefebvre opposes the Motion. (Doc. 31.)

## Discussion

Title 42 U.S.C. § 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To succeed on a § 1983 claim, a plaintiff must allege: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

### I.     Legal Standard

To withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "provide the grounds upon which [its] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff must also allege "enough facts to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As described by the Supreme Court in *Iqbal* and *Twombly*, this does not require a plaintiff to provide "detailed factual allegations" to support his claims, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011); *ATSI Commc'ns*, 493 F.3d at 98. A complaint is properly dismissed, where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Conversely, this presumption of truth "is inapplicable to legal conclusions," and therefore the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to

7

accept conclusory allegations or legal conclusions masquerading as factual conclusions" (citation omitted)).

In cases involving a *pro se* plaintiff, as here, the court must construe the complaint "liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), by "reading such submissions 'to raise the strongest arguments they suggest.'" *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). When assessing *pro se* complaints challenged by Rule 12(b)(6) motions to dismiss, courts "apply[] a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000). "This is particularly so when the *pro se* plaintiff alleges that h[is] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Nonetheless, even *pro se* litigants "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010).

## II.   Failure to Exhaust

Defendants argue that Lefebvre has failed to exhaust his administrative remedies as required by the PLRA. *See* 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

In a previous Report and Recommendation, I recommended that Defendants' first Motion to Dismiss be granted for Lefebvre's failure to exhaust, emphasizing in detail the mandatory nature of exhaustion under the PLRA and the requirement that the prisoner appeal his grievance to the highest level contemplated by the facility's grievance rules prior to commencing a lawsuit in federal court. (Doc. 23 at 9-13.) In Vermont, DOC grievance procedures require that an inmate appeal a grievance all the way to the DOC Commissioner to have completed the grievance process. *See LaBombard v. Burroughs-Biron*, Civil Action No. 2:09-CV-136, 2010 WL 2264973, at *3 (D. Vt. Apr. 30, 2010) (Conroy, Mag. J.), *adopted in full*, 2010 WL 2265004 (D. Vt. June 2, 2010) ("The Commissioner is the final arbiter of inmate grievances."). Because it was apparent from the face of his Complaint that Lefebvre had not appealed his grievance to the Commissioner, I recommended dismissal, a recommendation the district court adopted.[7] *See Petit v. Bender*, No. 99 Civ. 0969(SHS), 2003 WL 22743485, at *5 (S.D.N.Y. Nov. 19, 2003) (dismissing prisoner § 1983 claim for non-exhaustion where failure to complete grievance appeal procedures was apparent on the face of the amended complaint); *see also Torres v. Carry*, 691 F. Supp. 2d 366, 371 (S.D.N.Y. 2009) (granting motion to dismiss in prisoner's § 1983 claim because prisoner failed to allege completion

---

[7] As stated in the original Report and Recommendation (Doc. 23 at 11 n.10), the failure to exhaust is an affirmative defense, "inmates are not required to specially plead or demonstrate exhaustion in their complaints, *Jones v. Bock*, 549 U.S. 199, 216 (2007), and the burden is on Defendants to show that Lefebvre failed to meet the exhaustion requirement. "Dismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint." *Roland v. Smith*, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012); *see also Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).

9

of final step in grievance procedure); *Richardson v. Lorenzo*, No. 02 Civ. 6021(LAK), 2004 WL 66691 (S.D.N.Y. Jan. 15, 2004).

The Amended Complaint raises no new factual allegations that call this conclusion into question. The original Complaint alleges that Lefebvre "filed an emergency grievance" regarding his housing placement and was "told that it was not an emergency issue." (Doc. 5 at 3.) The documents appended to the Complaint bear this out, demonstrating that Lefebvre filed an initial informal complaint (Doc. 5-1 at 1), which he followed with a formal grievance (Doc. 5-1 at 2). Two days after the disposition of his formal grievance, Lefebvre completed the next step in the grievance procedure by filing an appeal to the facility superintendent, Defendant Potanas. (Doc. 10-1.) But there he stopped. This grievance appeal was decided on July 23, 2012 and returned to Lefebvre three days later, on July 26, 2012. (Doc. 10-1 at 2.) Lefebvre's original Complaint, though received by the court on July 30, 2012 (Doc. 5 at 1), was signed and served by him on July 22, 2012 (Doc. 5 at 18-20). As such, Lefebvre drafted and filed his first Complaint *before* Potanas had even decided his appeal, rendering it impossible that he could have then further appealed to the Commissioner (and received a decision back) before filing the Complaint—there was no decision to appeal. If anything, this failure to exhaust is made even more apparent by the Amended Complaint, which explicitly "remove[s] Andrew Pallito from the suit," in seeming recognition of his lack of involvement in the case. (Doc. 27 at 1.) The Amended Complaint also states that "Potanas was the official who decided Plaintiff's appeal," further clarifying the limited

steps that Lefebvre took in appealing his grievance.[8] (*Id*. at 3.) Lefebvre's failure to appeal Potanas's decision to the DOC Commissioner is fatal to his claim.[9]

As noted in the earlier Report and Recommendation (Doc. 23 at 12-13), Lefebvre has also not alleged any facts that would support a valid excuse for his failure to exhaust, such as the unavailability of administrative remedies. *See Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004).

All claims against Defendants should therefore be DISMISSED on this basis.

## III.   The Merits of Lefebvre's Eighth Amendment Claim

Defendants maintain that the claim also fails because, even accepting the allegations as true, Lefebvre has failed to state a viable Eighth Amendment claim.

Lefebvre's Complaint can be liberally read to raise two distinct Eighth Amendment claims: (1) Defendants violated the Eighth Amendment when they failed to protect Lefebvre from the initial sexual assault from his cellmate; and (2) Defendants violated the Eighth Amendment when they subsequently moved Lefebvre into the same housing unit as his assailant, placing him in fear for his safety. In the prior Report and

---

[8] Although the Amended Complaint also states that all of Lefebvre's grievance forms had "come up missing or were not filed properly" (Doc. 27 at 4), if none of those grievance forms relate to the filing of an appeal to the DOC Commissioner, Lefebvre did not complete the grievance process and thus has not properly exhausted his remedies as contemplated by the PLRA.

[9] As a defense to Defendants' exhaustion argument, Lefebvre cites § 7(A) of the Civil Rights of Institutionalized Persons Act (the "Act"). *See* Civil Rights of Institutionalized Persons Act, 94 Stat. 349 (1980). (Doc. 31 at 1.) This Act, which first introduced a discretionary exhaustion requirement into state prisoner § 1983 litigation, was the precursor to the PLRA, which strengthened the exhaustion provision by cabining that discretion and rendering remedial exhaustion mandatory. *See generally Porter v. Nussle*, 534 U.S. 516, 523-25 (2002) (discussing the evolution of the exhaustion requirement from the Act to the PLRA). The mandatory provision of the PLRA, unlike its discretionary counterpart under the 1980 Act, is still in force today. *See* 42 U.S.C. § 1997e(a). Given the PLRA's more recent vintage, Lefebvre will find neither solace nor solatium in the 1980 Act for his failure to exhaust.

Recommendation, I recommended that these claims be dismissed on their merits (Doc. 23), which the district court declined to adopt (Doc. 29). Nothing in the Amended Complaint alters the merits analysis, and I reiterate the analysis employed in the previous Report and Recommendation below, addressing each claim in turn.

### A.  Failure to Protect from Sexual Assault

It has long been held that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation omitted). Prison conditions may be harsh, but that does not give license to prison officials to allow the gratuitous beating or rape of one prisoner by another, as such conduct serves no "legitimate penological objective[]." *Hudson v. Palmer*, 468 U.S. 517, 548 (1984) (Stevens, J., concurring in part and dissenting in part). The Eighth Amendment's prohibition on cruel and unusual punishment does not condone the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (Internal quotation omitted). Thus, "[t]he failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment." *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985).

That said, every assault on an inmate by a fellow prisoner does not give rise to constitutional sanction for prison officials. The Eighth Amendment demands that the official have a sufficiently culpable state of mind—termed "deliberate indifference"—for

a constitutional violation to have occurred.[10]  *See Farmer*, 511 U.S. at 834-35.  The Supreme Court has explained that this standard is most similar to the recklessness standard imposed in criminal contexts.  Under this deliberate-indifference standard, an Eighth Amendment violation only occurs when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.  In the context of the duty to protect, "correctional staff would be on notice of a substantial risk of serious harm where there has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept separated."  *Goode v. Faneuff*, No. 3:04CV1524(WWE), 2008 WL 3360833, at *2 (D. Conn. Aug. 8, 2008) (citing *Ayers*, 780 F.2d at 209); *see also Farmer*, 511 U.S. at 842-43 (correctional staff would be on notice of a substantial risk of harm if there was a "longstanding, pervasive, well-documented" history of inmate attacks and staff had been exposed to that information).

Lefebvre's Complaint is devoid of any allegation that prison officials were aware of a risk of harm to Lefebvre when they placed Lake in his cell in November 2011.  There is no allegation that any prior assaults or threats between the two inmates had previously taken place, or that Lefebvre requested that Lake be removed from his cell out of a fear for his safety.  The Amended Complaint relates only to steps that each

---

[10] In addition to the state-of-mind requirement, the Eighth Amendment also demands that the deprivation at issue be "objectively, sufficiently serious."  *Farmer*, 511 U.S. at 834.  This requirement will be addressed in the next section, *see infra*, but it bears mention that the sexual assaults at issue no doubt meet this objective portion of the Eighth Amendment inquiry.

Defendant took *after* the alleged sexual assaults by Lake.  Absent allegations that would have placed Defendants on notice of a risk of harm to Lefebvre, I must conclude that Defendants were not deliberately indifferent to a substantial risk of harm to Lefebvre's safety prior to the November 2011 sexual assaults.  Under the prevailing Eighth Amendment "deliberate indifference" standard, Defendants cannot be held responsible for inmate assaults that they had no reason to think would occur.

Accordingly, any Eighth Amendment claim against Defendants for their failure to protect Lefebvre from the sexual assaults by his cellmate should be DISMISSED.

### B.     Housing Reassignment

Lefebvre's claim regarding his subsequent placement in the same housing as his assailant also implicates Defendants' responsibility to take "reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832.  The claim fails, however, on the other prong of the Eighth Amendment analysis.  In addition to the subjective state-of-mind requirement discussed above, a showing of deliberate indifference under the Eighth Amendment also demands that an inmate establish that he has suffered objectively serious injury so as to deny him "the minimal civilized measure of life's necessities." *Id*. at 834.  Here, Lefebvre fails to plead facts establishing this element of deliberate indifference, i.e., that the harm suffered—fear of another assault—was sufficiently serious to constitute an Eighth Amendment violation.  Although Lefebvre repeatedly alleges that the housing placement put him in danger, the sole harm alleged is that he had "horrible flashbacks" and was "mentally tormented over and over again." (Doc. 5-1 at 1.)  Significantly, Lefebvre has not alleged that Lake attacked him again after the new

14

housing placement, or that any other physical attack by any inmate took place. The Amended Complaint is also devoid of any such allegation. In other words, Lefebvre does not allege that Defendants failed to prevent a harm, but rather, that Defendants failed to prevent him from being *exposed* to a *risk* of harm.

The mere fear of an assault, however, does not constitute a sufficiently serious injury to state a claim under the Eighth Amendment. *See Dawes v. Walker*, 239 F.3d 489, 494 (2d Cir. 2001) (dismissal of a failure to protect claim affirmed, where plaintiff did not allege he was assaulted by other inmates); *Cruz v. Hillman*, No. 01 CIV. 4169 DABDF, 2002 WL 31045864, at *8-9 (S.D.N.Y. May 16, 2002) (allegations of a risk of harm are insufficient to meet objective requirement of Eighth Amendment); *Hudson v. Greiner*, No. 99 CIV. 12339(LAP), 2000 WL 1838324 at *7 (S.D.N.Y. Dec. 13, 2000) (plaintiff's allegation that the prison administration knew that placing plaintiff in the general prison population could lead to his being injured, without an allegation of physical injury, was insufficient to state an Eighth Amendment claim); *Bolton v. Goord*, 992 F. Supp. 604, 627 (S.D.N.Y. 1998) (evidence that plaintiffs "lived in fear of assault from their cellmates is not an objectively serious enough injury" to support an Eighth Amendment violation); *see also Doe v. Welborn*, 110 F.3d 520, 524 (7th Cir. 1997) (fear of assault was not "the kind of extreme and officially sanctioned psychological harm that might support a claim for damages under the Eighth Amendment"). As these cases demonstrate, "[h]owever legitimate [the plaintiff prisoner's] fears may have been, . . . it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Babcock v. White*, 102 F.3d 267,

15

272 (7th Cir. 1996).  Therefore, without any subsequent assault that satisfies the objective prong of the Eighth Amendment inquiry, Lefebvre's claim is not cognizable.

Because Lefebvre has not adequately alleged that he suffered serious injury as to his second constitutional claim, this claim should also be DISMISSED.

## Conclusion

For the reasons set forth above, I recommend that Defendants' Motion to Dismiss (Doc. 30) be GRANTED, and the case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 31st day of July, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).